William J. and Phyllis T. Connor v. Commissioner.
Connor v. Commissioner
Docket No. 91350.
United States Tax Court
T.C. Memo 1964-105; 1964 Tax Ct. Memo LEXIS 232; 23 T.C.M. (CCH) 618; T.C.M. (RIA) 64105; April 22, 1964
William J. Connor, pro se, 321 Ward Pkwy., Kansas City, Mo. Joseph T. de Nicola, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1954 through 1958 as follows: Year
Deficiency
1954
$1,876.88
1955
2,518.60
1956
1,451.92
1957
1,479.76
1958
2,010.01
The issues are whether respondent erred in disallowing certain expenses *233 incurred by petitioners, residents of Kansas City, Missouri, for the upkeep of an apartment in Chicago, other alleged entertainment expenses and medical expenses during some of the years involved, and a casualty loss in the year 1955 in the sum of $2,058. Findings of Fact Some of the facts have been stipulated and they are found accordingly. William J. Connor, hereinafter referred to as petitioner, and his wife, Phyllis, reside in Kansas City, Missouri. They filed joint income tax returns during the years here involved with the district director of internal revenue at Kansas City, Missouri. Petitioner is an attorney and a former Special Assistant United States District Attorney in the State of Illinois. He left the Government employment in 1947. During the years here involved petitioner was Director of Labor Relations for Interstate Bakeries Corporation at a salary that ranged from a low of $30,077 in 1954 to $33,750 in 1958. Petitioner was required to travel extensively in carrying out the duties of his employment. His employer had a traveling expense account procedure whereby its employees, including petitioner, made out a weekly expense report voucher. On the basis of *234 this voucher, the Interstate Bakeries Corporation would reimburse the employees for lodging, meals, taxicabs, tips, baggage, phone calls, postage, entertainment and all other business expenses. Petitioner was reimbursed by his employer, Interstate Bakeries Corporation, in the following amounts, for the years shown, on the basis of the weekly expense report vouchers referred to above: Total amounts of
reimbursements to
petitioner for lodging,
meals, taxicabs, tips,
baggage, phone calls,
postage, entertainment and
all other business expenses
as reported by petitioner
on weekly expense re-
Year
port voucher
1954
$3,209.75
1955
3,247.40
1956
2,653.41
1957
3,313.11
1958
2,373.29
Petitioner, in addition to his home in Kansas City, maintained an apartment at 880 Lake Shore Drive, in Chicago. Petitioner also maintained a membership in the Lake Shore Club located near his apartment. Whenever petitioner was in Chicago he stayed at his apartment at 880 Lake Shore Drive. Interstate Bakeries Corporation reimbursed petitioner at a per diem rate for lodging for each day he stayed in Chicago at his Lake Shore Drive apartment as follows: *235 Year
No. of Days
Amount
1954
93
$558.00
1955
106
636.50
1956
77
462.50
1957
30
180.00
1958
63
501.75
In the income tax returns for the years here involved petitioner itemized certain deductions as miscellaneous expenses consisting of expenses of maintaining the Chicago apartment, payments to the Lake Shore Club and entertainment expenses. Petitioners deducted on their income tax returns the following amounts as miscellaneous expenses under itemized deductions: 1954
1955
1956
1957
1958
880 Lake Shore
$1,374.25
$1,173.60
$1,273.60
$1,293.00
$1,410.00
Drive Apt.
Depreciation,
581.60
581.60
581.60
581.00
581.00
Furniture
Lake Shore Club
398.47
412.48
480.79
262.45
380.00
Mission Brook
120.00
Club
Entertaining
600.00
446.00
200.00
300.00
340.00
Total
$3,074.32
$2,613.68
$2,535.99
$2,436.45
$2,711.00
In his notice of deficiency respondent disallowed the above expense items. Petitioner and his wife were involved in an automobile accidentin November of 1954. They both suffered substantial personal injuries and petitioner's Cadillac automobile was wrecked. The drive of the other car, *236 Mrs. Bieselt, was killed in the accident. On their 1955 return petitioners deducted a casualty loss in the amount of $2,058 resulting from the sale of their automobile that was involved in the accident in 1954. The loss was computed on their return as follows: Value of car before accident (Depreciated Value)
$4,000
Car sold for salvage in April, 1955 to Fullerton Auto
1,942
Parts, Hagerstown, Md.
Casualty Loss
$2,058
Petitioner and his wife sued Mrs. Bieselt's estate for personal and property damages they sustained and in 1958 their suit was compromised and settled for $15,000, with the plaintiffs in that action realizing around $11,000, after payment of costs and attorney's fees. Petitioner's mother-in-law lived with his wife's sister in Washington and she took her mother as a dependent in 1954, 1955 and until her death in 1956. Petitioners listed on their 1954 return $2,340.51 as medical and dental expenses ($2,090.51 medical and $250 dental), $1,020 of which was for nurse's care for Phyllis T. Connor's mother. In computing their deduction on their 1955 return for medical expenses, petitioners listed medical and dental expenses in the total amount *237 of $1,793.95. Of this amount $1,020 was for nurse's care of Phyllis T. Connor's mother. In computing their deduction for medical expenses on their 1956 income tax return petitioners listed $1,539.09 as expenses incurred during 1956. Of this amount $802.09 was for nurses and hospitalization of Phyllis T. Connor's mother. In computing their deduction for medical expenses on their 1957 income tax return petitioners list $1,538 expended for medical and dental care. Respondent disallowed all of the claimed medical expense deductions for the years 1954-1957, inclusive. Opinion Petitioner tried his own case but he engaged counsel to argue his case on brief. Respondent's disallowance of the miscellaneous expense items cast upon petitioner the burden of showing he made the listed expenditures and that they are deductible because they were "ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business" as provided in section 162 of the Internal Revenue Code of 1954. Petitioner introduced no evidence at all with respect to the disallowed item of $120 paid to Mission Brook Club in 1954. The respondent's disallowance of the item is *238 sustained. Petitioner wholly failed to show that he was entitled to any expense deduction based upon his business use of the Chicago apartment. In fact the record shows he was reimbursed on a per diem basis for any business use of the apartment. Anything beyond that use was of a personal nature and hence not deductible. Moreover, the record shows that this apartment was a cooperative apartment; that the amounts he deducted as miscellaneous expenses included his portion of mortgage interest and taxes and he deducted the mortgage interest and tax payments again in other schedules in his returns. We sustain respondent's disallowance of items of miscellaneous expenses based upon the alleged business use of the Lake Shore Drive apartment or depreciation of furniture therein. The Lake Shore Club appears to be a club where everything is charged to the member and he pays in monthly bills. Petitioner lived at this club prior to his marriage when he was an Assistant United States Attorney for the Northern District of Illinois. Petitioner testified he never used the Club for any purpose other than business. There is a little evidence here that, at some unspecified occasions, petitioner signed *239 club checks for food and beverages furnished to labor representatives. Again the record shows reimbursement for entertainment expenses. The record would not warrant any finding of unreimbursed Lake Shore Club expenses for any of the years involved. The third miscellaneous expense item common to all of the years is "entertaining". We do not know how this differs from the Lake Shore Club category but in any event the record fails to support the deduction. All we have is a vague rambling statement of petitioner that he, in 1954 "took off $600 on entertaining" which seems to be his estimate of entertainment costs for which he was not reimbursed. We uphold respondent's disallowance of the items in the "Entertaining" category. On their 1955 income tax return petitioners reported the destruction of their automobile in a collision that occurred in November of 1954. They claimed a casualty loss in the sum of $2,058, being the difference in the value of the car in November 1954 just before the collision (stated to be $4,000) and the sale price received when the car was sold for salvage in April 1955 for $1,942. Respondent disallowed the claimed casualty loss and argues the loss, if any, *240 occurred in 1954 when the casualty occurred and, in any event, the recovery in 1958 in the negligence action ($15,000 less costs and attorney's fees) more than compensated petitioners for this loss. Ordinarily the casualty loss deduction is to be taken the year it is sustained. Where after the casualty, reasonable prospects of recovery exist, there might, under certain circumstances, be postponement of the deduction until the year when no more reimbursement might reasonably be expected. In order to support his 1955 casualty loss deduction petitioner would have to show that reasonable recovery prospects existed at the close of 1954 and such prospects became nonexistent in 1955. He does not even argue the record would support such a conclusion. A loss is shown by evidence of a completed and closed transaction in the taxable year it is taken. We need not consider whether the 1958 settlement compensated petitioners for the loss of their automobile. The 1955 casualty loss claim is defeated by petitioner's own evidence of the 1954 casualty event and the complete lack of evidence with respect to any reasonable recovery prospects that might postpone recovery to a later year. There is authority *241 that where the loss is covered by insurance the deduction is allowable for the year in which the claim for compensation is settled. Allied Furriers Corp., 24 B.T.A. 457; Commissioner v. Harwick, 184 F. 2d 835 (C.A. 5, 1950), affirming a Memorandum Opinion of this Court. We know of no authority which would render the loss deductible in the year the taxpayer chooses to sell the salvage. After all, the sale of the salvage is only some evidence of the value of the car after the accident. The measure of recovery was the difference in the fair market value of the car immediately before and immediately after the November 1954 accident. (Sec. 1.165-7(b)(1), Income Tax Regs.). Petitioner failed to substantiate a 1955 casualty loss in any amount. During the years 1954, 1955, 1956 and 1957 petitioner took deduction for alleged medical expenditures. Petitioner included in his medical expenditures during the first three years amounts he spent for the nursing care of his mother-in-law who died sometime in 1956. He now concedes such expenditures ($1,020 for 1954, $1,020 for 1955 and $802.09 for 1956) were not includable as part of his medical *242 expenses since she was not his dependent. With these items eliminated there is no question but that the sum of the other items reported does not exceed 3 percent of petitioner's adjusted gross income for the years 1955 and 1956. Petitioner had the burden of substantiating the medical and dental expenditures listed on his 1954 return and totaling $1,320.51 exclusive of the item (nurses $1,020) which he apparently concedes was for the care of his mother-in-law. [1] The disallowance here was because of failure to substantiate. Petitioner wholly failed to carry his burden. It was important here for consideration of all of the items makes an amount that is rather close to 3 percent of petitioner's adjusted gross income. Also petitioner's mother-in-law was receiving help from petitioner this year. There were no canceled checks or receipted bills or any explanation indicating they were not available or indeed any evidence by petitioner to the effect that he had made the listed payments. We hold for respondent on the issue. *243 Petitioner was not called upon to substantiate the medical expenditures (totaling $1,538) on which his 1957 medical deduction was based. In his notice of deficiency for that year respondent stated: The deduction of $501.53 claimed as medical expense is disallowed in its entirety since total medical expenses shown on your return do not exceed three per centum of your adjusted gross income. * * * The return for that year reported adjusted gross income of $34,549.10 and respondent determined it should be increased in adjustments that are not here in controversy. To the extent that total medical expenditures in the sum of $1,538 exceeds 3 percent of petitioner's adjusted gross income for 1957, as adjusted by respondent, the amount shall be allowed as a medical deduction. Respondent filed an amendment to his answer asking for an increased deficiency for the year 1958 in the amount of any medical expenses allowed as a medical deduction in prior years. This was based on the settlement of the automobile accident case wherein the petitioners received a net of some $11,000. The only year to which this contention could apply would be 1957 for we have held the claimed medical deductions *244 for 1954, 1955 and 1956 were not sustained for other reasons. It must be admitted that reimbursement in a later year of a medical expense that has been the subject of a deduction would constitute income in the year of reimbursement. Sec. 1.213-1(g), Income Tax Regs. But since this issue comes into this case by way of respondent's pleading, the burden was on respondent to show that reimbursement of any 1957 medical expenditures growing out of the 1954 accident occurred in 1958. The meager record before us merely shows that a compromise settlement in a suit for damages was made in 1958. The suit sought damages for many items, including permanent personal injuries and property damages. In an exhibit introduced by respondent consisting of a letter to respondent's agent by petitioner's attorney, it was stated that the settlement was "a very modest compromise settlement" dictated by the legal problems and contemplated trial difficulties. All of the evidence indicates it was a compromise settlement of a much larger demand. The letter referred to above indicates that original settlement demands started at claims of around $55,000 and the letter further states: "There *245 was never any allocation by us that certain of the recovery was designated for payment of the car or certain medical expenses, but we merely settled for the general damages they had incurred." Moreover, there is nothing in the record to show that the 1957 medical expenditures were related to the 1954 automobile accident. We hold respondent failed in his burden of showing receipt of additional income in 1958 in the form of reimbursed medical expenses relating to injuries petitioners suffered in the 1954 accident and taken as a deduction in 1957. Decision will be entered under Rule 50. Footnotes
1. Petitioner computed his medical expense wrong. He listed medical expenses in the sum of $2,090.51, subtracted 1 percent of his gross income, $344.97 and added the result, $1,745.54 to his dental expense of $250 to arrive at a figure of $1,995.54. He then subtracted 3 percent of his gross income or $1,034.91 to arrive at the amount of the deduction or $960.63.↩